There are a lot of issues in this case and so this morning what I want to do is limit my discussion to the issues raised in the 28 J letters and to also just more fully articulate the due process problems that existed at the hearing. The government has submitted a 28 J letter and in which it argues that section 101 E of the Real ID Act applies to this case and we disagree with that. If the court, it's attached to the 28 J letter, section 106 E of the Real ID Act. It states that no court shall reverse a determination made by a trier of fact with respect to the availability of corroborating evidence as described in three new sections that were added by the Real ID Act. And so those three sections, this is really referring to a determination made under one of those three new sections of law. And in this case the immigration judge clearly wasn't making a determination under either any of those sections. And in fact section 101 H3 of the Real ID Act makes clear that none of those three new sections are retroactive. They're specifically perspective. They apply to applications filed on or after the date of enactment of the Real ID Act. But there is a provision in the Real ID Act that does apply to this case and that is new section 1252 A2D. And as the court held in Fernandez-Ruiz versus Gonzales, that provision makes clear that the Court of Appeals retains jurisdiction to And it specifically states that no provision under section 1252B or 1252, sorry, 1252A2B or A2C or under any other provision in the Act strips it of jurisdiction when there's a legal or constitutional challenge. And the reason this is relevant is because we made a Lanza argument with respect to review of the denial of voluntary departure. The board summarily affirmed the IJ's decision. And because there was a legal and constitutional challenge that we made to that decision, the court would have jurisdiction to at least consider that. But we don't know if the board upheld the denial of voluntary departure on the basis of the immigration judge's discretionary finding or on the basis of her determination that he filed an application for asylum when he has no claim. Counsel, let me just cut through some things to a couple of issues that concern me about your client's position in this case. Assuming that he's credible, assuming that everything went perfectly, the heart of his claim seems to be if I go back to Russia, I have to go into the Army and things in the Army are really critical. So if he has an asylum claim under binding Ninth Circuit precedent, what is your response to that? Right. And this is touching on the due process challenges? It's touching on everything. Because if that's his claim, no matter how perfectly he was able to describe it, no matter how credible he's deemed to be, I just don't see where it gets him. I guess that's just speaking for myself. That's my concern with your position. Well, at the very beginning of the hearing, we attempted to articulate the basis of his claim. And the immigration judge cut counsel off immediately and said, this is your only claim. Your claim is that you don't want to go back to Russia because you don't want to serve in the military. When, in fact, on his I-589 and in the declarations that he submitted, he made clear that he was also afraid on account of his religion and on account of his membership in a social group in his family that had been persecuted in Russia on account of their religion. And those claims we were never able to develop. And that's why we cited to several cases in our 28-J letter just to buttress the argument that the immigration judge rendered these proceedings fundamentally unfair. She cut off testimony from Mr. Zolotukhin's mother when she attempted to describe persecution that she suffered and that the children suffered. She flat out refused to allow Mr. Zolotukhin's grandmother to testify at all. She prejudged the value of that testimony. She wouldn't allow us to present the expert testimony who could have elaborated on the risk that our client faced for failure to enlist in the military, but also on account of his religion. And so we believe that by essentially prejudging the merits of the case, and of course, we have to articulate and develop the record, and this court has held that that's a violation of due process. And all we have to establish is that that evidence would potentially affect the outcome. And I think that we've easily done that in this case. And so if the court does not find that on the record before it, Mr. Zolotukhin has met his burden, at a minimum it has to remand so that he has a fundamentally fair hearing. In addition to prejudging the merits of the case and of cutting off testimony, the immigration judge evinced a genuine bias against Mr. Zolotukhin really at the outset. She repeatedly stated that she didn't believe him, based entirely on her incorrect conclusion that he didn't know the name of his church, which he did and he said, even if I believed you, you don't have a claim, so you can move on or we can drag this out. Those were her exact words. She took on the role of prosecutor by sua sponte calling his mother's church in another city, leaving a message, this was done in open court, she left a message on the machine at the church and she said, this is immigration judge Anna Ho, I'm trying to verify that some individuals in my courtroom are members of your church, please call me back. She gave her name and then the name of the government attorney and phone number. And then later she instructed the government attorney to do research into the case to determine whether... Is an immigration, leaving aside some of the other aspects of the immigration judge's behavior, isn't an immigration judge allowed to seek evidence that the petitioner is relevant to the claim, independently of what the parties present under the regulations that apply? Sure, and that would make sense if she knew exactly what the testimony would have been. But in this case, she didn't even allow the petitioner an opportunity to articulate what all of his claims were. And so we have no way of knowing how the petitioner is relevant. It's certainly a violation of due process to just make a determination that none of this evidence would be relevant without knowing what it is. With respect to the expert, she relied on his declaration, but then refused to allow him to testify, to elaborate upon certain things that he concluded in his declaration. And so in this particular case, we think that it's quite clear that had Mr. Zolotukhin been given the opportunity to develop the record, he would have plausibly been able, or potentially have been able to impact the outcome in the case. So he wasn't required to definitively prove that that evidence would have met his burden, but that it potentially had the effect. And clearly, this court recently held in Thomas, in its en banc decision, that a family is a social group for asylum purposes. And he repeatedly attempted to develop that aspect of his claim, but was cut off so many times that it just, he never got to do that. And I'd like to reserve the rest of my time for rebuttal. You were there, of course. Excuse me? You were there, of course. I was. And did you sit through any other hearings? Did I sit through any? Any other hearings at this same courtroom? In front of the same judge? Yeah. Have I seen this judge before? I'm sorry, I'm not sure. I mean, I've had many hearings in front of Judge Ho, and this is, I mean, this is the kind of thing that she does. I mean, the case that went ahead of us. I think we need to stick to the record. Right. I'm just not. And led to that by the question. My view is we have to look at the record here. And we can't let you testify. Right. I just wasn't sure where I was supposed to go with that. I understand that. Okay. Thank you. We've had a number of cases involving Judge Ho. A lot of them. A lot of them. Okay. Thanks. Where did the hearing take place? Here in Seattle? Seattle. May it please the Court. My name is Aviva Popster for the Respondent. The petition for review should be denied in this case, Your Honors. Not just because Petitioner failed to make a credible claim for asylum. But in addition, you don't even really need to reach the issue of the asylum in this case because Petitioner's asylum claim was also denied in the exercise of discretion. Petitioner came here legally and was, in fact, provided with every chance to remain in the United States. He was, in fact, a lawful permanent resident. But he committed several crimes, including a violent crime, which caused the immigration judge to deny his asylum claim in the exercise of discretion. And this Court can easily find that that was not an abuse of discretion given the deferential standard applied to those types of determinations. This is an individual who, when asked about his DUI conviction in open immigration court, said that the conviction, he didn't remember much about it because it wasn't interesting. He's been arrested three or four times in the United States. Did he say that in English? Yes, I believe he did. There was no interpreter there. He did testify through an interpreter, but he did make some interjections in English during the hearing. But then when did he say English? Did he say he didn't remember it because it wasn't interesting? It was not interesting. He said that in English. I believe he did. And, in fact, he was asked a couple of times, a couple of questions to clarify that. In addition, the conviction that formed the basis of, or the clearest basis of the immigration judge's discretionary determination was that this individual was convicted of domestic violence and, in fact, beat the mother of his child. And there are pictures of that beating in the record. When asked about it, he said that he slapped her in the mouth, and that's all he did. Meantime, the pictures depict bruises on her arms, and there was also documents in the record indicating that he also kicked her. And, in fact, a restraining order was taken out against him, which I believe was in place for a year, against her, against him contacting her. He was very evasive about that incident, and he stated that he violated the terms of his plea by not attending anger management classes, which were mandated by the court, because he forgot to go. Well, he doesn't sound like a very nice person. Exactly. And he's not a person who's deserving of asylum in this country. But is he deserving of a fair hearing? Absolutely, and he got a fair hearing. He did? Yes. Assuming, just for a moment, assume that the judge wasn't fair in regard to testimony about asylum, which I'm not saying she wasn't, but assuming that, would the discretionary decision, would the alternative discretionary decision that he not be given relief render the due process issue moot? Absolutely. The due process issue is totally moot based on that finding, because he's, the testimony that he's. Well, it might not be moot, but don't we still have to find, even if there's a due process violation, don't we have to find prejudice in order to grant relief? So is it more accurate, is it mootness or is it lack of prejudice? Maybe it's not mootness. Well, if it's not mootness, it's definitely lack of prejudice. I mean, the testimony that he's complaining he didn't get to give had nothing to do with his crime. I mean, his grandmother. Her crime and his. Right, all of his crimes. Yeah. His grandma's testimony about what happened in the Soviet Union has absolutely nothing to do with the fact that he's got a string of crimes that occurred a year before the immigration hearing. I mean, this is not an individual who should be granted asylum. Does the record show that he had an adequate opportunity to explain his criminal record and that there was any of the testimony that he was not allowed to give or where he was cut off? Did any of that pertain to his criminal history? No. No. He was given adequate opportunity. And, in fact, the immigration judge said, I want to hear everything, I have wide latitude, and we're going to hear, I'm going to hear from both sides about this, about these crimes. And, in fact, it's a pretty unusual step for an immigration judge to take to deny asylum in the exercise of discretion. We don't see too many of those cases where that, in fact, is done. The record of inadmissible alien, at page 563 to 64 of the record, lays out all of his crimes. He was, in fact, arrested the second time while he was out on bond for the first set of charges. And the criminal judge, at page 565 of the record, the recital of conviction, said that he willfully ignored the court's order to attend anger management classes. The judge went so far as to actually call it willful on the record. So, again, even not even reaching the asylum claim burden issue, this is an individual who was properly denied asylum in the exercise of discretion. And that's really the only determination that the court even needs to address in its decision in this case. Did you represent the government at the hearing? I did not. I do not represent the government at that level of proceedings. I was not there. Again, as far as the ---- That's not a good level. No, that's not. That's correct. I'm not a trial attorney. The justice ---- Is that Department of Justice that handles that at a different level, or is it some other ---- It's Homeland Security. I don't handle cases at that level. And, again, the due process claim here ---- But before Homeland Security, Department of Justice was there. INS. INS. Yes. But the appeals are handled by ---- Department of Justice, Civil Division. Yes. And, again, in this case, when we talk about due process, again, any sort of additional testimony of the type that Petitioner complains of would only go to the merits of the asylum claim. There was no testimony relating to, again, the discretionary determination. And, furthermore, even if the Court does decide to reach the asylum claim, Petitioner hasn't met his burden. Petitioner's counsel, for example, mentioned the Court's recent decision in Thomas. But Thomas presupposes that the Petitioner is credible. That's the first rung, as it were, that Petitioner has to climb in order to even make an asylum claim. And, in this case, we don't have it. I mean, we have an individual here who claimed to be ---- claimed that he would be persecuted because he's Pentecostal Christian and cannot bear arms and, therefore, cannot do his military service in Russia. And, interestingly, he claims to be a devout member of this pacifist religion but has again a string of crimes, including a violent crime. But, be that as it may, he didn't really know very much about Pentecostalism. And when he was asked about it on the record, he said, I don't know much about it. He couldn't really describe his religious worship in the United States very clearly. He couldn't provide the name of his pastor. He couldn't provide the location of his church. The immigration judge did call the church because there was no verification provided. And that was definitely within ---- she was trying to help him. I mean, if they ---- if she had reached somebody at the church and they said yes ---- That's going a little far, given the context. Well, it could have. It could have helped. She was trying to help him.  Well, it could have. I'm going to rest your argument fine, but ---- But if someone at the church had picked up the phone and said, yes, I verify, I'm the pastor, I verify. Isn't it more likely that she was trying to catch the mother in a lie or him in a lie? Well, I don't know if it was more or less likely, but verification could just as easily have helped his case as hurt his case. You don't need us to find a good motivation on her part to win, do you? No. No. There doesn't need to be a good motivation. She properly conducted the hearing. He was allowed to present whatever evidence was necessary. And on the issue of evidence, what was interesting is that he didn't provide any evidence from the pastor of the actual church that he himself attended. There was evidence from some pastor in Germany who was related to his mother's church, but there was clear testimony that he wasn't a member of his mother's church. He attended another church. And that, which allegedly he went there once a week. And there was nothing from that church to say that he was actually attending. Were there some comments that the judge made that were not on the record? I don't know. That's why this court is bound by the record, because I wasn't there. I'm just asking you. Petitioner claims that, but I don't have what's not on the record, Your Honor, so there's no way to substantiate that. Did you check that out? Excuse me, Your Honor? Did you check that out? I'm not really sure there would be a... Make a phone call to the judge and say, you know, did you do this or not? I mean, it's easy. I'll give you a phone right now. I did not, Your Honor, and I suspect she probably wouldn't remember anyway. Thank you, Your Honor. All right. With regard to the off-the-record conversation, it did take place. There was a sworn declaration from counsel. It was submitted to the board. The government never refuted it. The judge offered voluntary departure a discretionary form of relief if Mr. Zolotukhin withdrew his application for asylum. This happened twice. And she said, if you don't, I'll likely find your application frivolous. With regard to discretion, it's irrelevant with respect to withholding and CAT protection. And so the government can go on and on about how horrible it thinks our client is, but it really has no bearing on whether he was provided a fundamentally fair hearing and an opportunity to develop the record. And certainly he could have demonstrated eligibility for nondiscretionary forms of relief, withholding and protection under the torture convention. If Judge Ferguson doesn't mind, I would appreciate if we let you have a few more minutes to argue, maybe two or three minutes, because the government's argument really stressed the lack of prejudice and the alternative holding that he shouldn't get asylum and discretion. And I don't think your argument has really addressed that, your oral argument. Well, sure. I don't mind. I've got no place to go to. With regard to the discretionary determination under the application for asylum, we feel like the due process problems just permeate the record. And so how can an immigration judge offer two times to grant a discretionary form of relief to the same individual who she believes is so undeserving of another form of discretionary relief? And so that, in addition to all of the due process problems in the case, to prejudging, to evincing a bias, becoming a prosecutor, really call into question whether this was an exercise of discretion and whether it was really an abuse of discretion. And I'm not saying that if it was a fair hearing that she wouldn't have had discretion to consider these things, but the problem is we don't know that she was really fairly considering all these things because she did so many things in this case that rendered the proceedings unfair, and in particular, again, those off-the-record conversations. And with regard to prejudice, she wouldn't allow the expert to testify. And this court recently held in Lopez-Umanzor that when an immigration judge prejudges the value of an expert's testimony that can corroborate a claim, that that is a due process violation. And we think in this case, if the expert had been given an opportunity to testify, he would have been able to establish that our client not only faces persecution for failure or his refusal to enlist in the military, but also because of his religion and because of his family relationship to a family of known Pentecostals. Similarly, his grandmother could have, in her declaration, she stated that she was aware that her grandson, the petitioner, and his mother and other family members were harmed because of her. And we had her ready to testify to establish that the harm, the future harm, and some of the harm that the family experienced in the past would be on account of their familial relationship with the grandmother. And this is similar to the Thomas case. The government argues, well, we can't even go there because of these credibility issues. But the immigration judge, she didn't really make a credibility determination with regard to whether he was raised Pentecostal, came from a Pentecostal family that was known as a Pentecostal family. And that wasn't really called into question because we never got to present it. She found the petitioner not credible based solely on testimony from his mother, but we believe the testimony was consistent. And he did know the name of his pastor. He knew the street address of his church. I think a lot of people don't know the exact address of their church. It doesn't mean he's not Pentecostal. And the judge didn't rely on his lack of knowledge of the religion in her decision to deny the application. And so I don't know if I've fully addressed those questions. Oh, just actually one more point. The board didn't even address the Jewpashna issues, and so at a minimum the court would have to at least remand and order the board to consider them because in summarily affirming, all it did was affirm the underlying decision. It didn't in any way address these new arguments that were raised on appeal. And so at a minimum the court would have to do that. Thank you. Thank you. The matter stands submitted. All right, now.
judges: Pregerson, Graber, Gould